### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | **CIVIL ACTION** |
| **Plaintiff** | * | |
| | | **NUMBER: 10-3062** |
| **v.** | * | |
| **46.26 ACRES of LAND, MORE or LESS,** | * | **SECTION: "J" (1)** |
| **SITUATED in PARISH of PLAQUEMINES,** | | |
| **STATE of LOUISIANA, and NATIONAL** | * | |
| **FOOD and BEVERAGE CO., INC., et al.** | | **TRACT NOS. P602, P602E-1, P602E-2** |
| | * | |
| **Defendants** | | |
| | * * * | |

### MEMORANDUM OF LAW IN SUPPORT OF UNITED STATES' MOTION TO STRIKE DEFENSES AND OBJECTIONS TO THE TAKING IN NATIONAL FOOD AND BEVERAGE'S ANSWER OR IN THE ALTERNATIVE FOR JUDGMENT ON THE PLEADINGS

### I. INTRODUCTION

Defendant, National Food and Beverage Co. ("National Food"), filed a 71-page answer in this case, objecting vociferously to the taking of its property by the United States. *See* Defendant's Answer, Rec. Doc. # 7. Although it rewords and repeats the same defenses in many different ways, National Food claims in essence that there is no necessity for a taking of its property. It asserts that the United States filed this action arbitrarily, capriciously and in bad faith in order to interfere with National Food's ongoing litigation against the United States in the Court of Federal Claims. It further claims that the United States, in entering into a Cooperation Agreement with Plaquemines Parish whereby Plaquemines Parish issued a Commandeering Order against the subject property, agreed not to condemn, and hence should be estopped from taking National Food's property.

None of National Food's defenses or objections constitutes a valid defense to this

condemnation action. Therefore, to eliminate needless discovery and expense litigating these issues, the United States hereby requests the Court to dismiss these defenses and objections as insufficient under Rule 12(f). Alternatively, the government respectfully requests judgment on the pleadings under Rule 12(c) on the issue of the government's right to take in this action, leaving for trial only the issue of just compensation. Elimination of these meritless defenses and objections will allow the parties and the Court to proceed to the determination of the just compensation due.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A.    Background Facts

After Hurricane Katrina struck in 2005, the United States Army Corps of Engineers ("Corps"), in coordination with several Louisiana parishes and levee districts, undertook the massive reconstruction and rehabilitation of levees in and around New Orleans and the surrounding Gulf Coast. As part of that effort, Plaquemines Parish ("the Parish") and the Corps entered into cooperation agreements whereby the Parish agreed to commandeer necessary land, easements, and rights-of-way through the use of orders issued under authority of the Louisiana Homeland Security and Emergency Assistance and Disaster Act, La. R.S. § 29:721, *et seq. See* October 25, 2005 Cooperation Agreement and January 17, 2006 Amended Cooperation Agreement.[1] In both iterations, the agreements provided that the Corps would identify land, easements, and rights-of-way necessary for the rehabilitation and reconstruction effort, and the Parish would exercise its authority to commandeer. *See* Amended Cooperation Agreement, Art III, ¶ A(3)(a); *see also* La. R.S. 29:727F(4) (providing that "[s]ubject to any applicable requirements for compensation, [the Parish President may] commandeer or utilize any private property if he finds this necessary to cope with the local

---

[1] *See* Exhibits 2 and 3 to Defendant's Answer, Rec. Docs. ## 7-3 and 7-4.

disaster."). The Amended Cooperation Agreement further provided that once the Parish had commandeered the necessary land, the Parish would provide a right of entry to the Corps, which would undertake the rehabilitation and reconstruction efforts. *Id.,* ¶ A(3)(c).

Although the commandeering statute obligates the Parish to pay just compensation to property owners whose lands are commandeered, the Amended Cooperation Agreement specified that the Corps, "in the name of the [Parish]," shall "identify and provide just compensation" to the owners of any commandeered properties. *Id*., Art III, ¶ B; *see also* La. R.S. 29:727F(4). It further specified that if the Corps was unable to obtain free and unencumbered title or to reach an agreement with the property owners, the United States would obtain the rights through the exercise of eminent domain. *Id.,* Art. III, ¶ (B)(2).

On January 26, 2006, Plaquemines Parish commandeered interests in the National Food property.[2] The interests acquired were described as:

> assignable rights and easements for access and to clear, . . . and remove therefrom all trees, underbrush, obstructions, and any other vegetation, structures or obstacles within the limits of the right-of-way; to utilize said property as a work area . . . to obtain borrow, to stockpile borrow material, to excavate and remove soil, dirt, and other materials from said property; and to perform any other work necessary and incident to the construction of the Project. . . .

*Id.* The commandeering order granted a "right of entry" to the Corps, which authorized the Corps "to enter upon these lands to gain access to obtain borrow, to stockpile and process material, and to construct (repair and rehabilitate) said levee. . . ." *Id.* Subsequently, contractors working on behalf of the Corps entered National Food's property, excavated fill material, and utilized the temporary work area and road easements. Materials removed from Plaintiff's property were used for the

---

[2] *See* Commandeering Order, Exhibit 4 to Defendant's Answer, Rec. Doc. # 7-5.

construction and rehabilitation of levees damaged by the surge and forces of Hurricane Katrina.

## B.    Litigation History

### 1.    The State Court Litigation

On January 25, 2007, National Food filed suit in state court against the Parish and several other local governmental entities alleging a taking based on the Parish's commandeering of its property. *National Food & Beverage Co., Inc. et al. v. Parish of Plaquemines, et al.*, No. 54-414 (25th Jud. Dist. Ct., La.).[3]  The state court complaint alleges that "[f]ollowing Hurricanes Katrina and Rita and without notification to plaintiffs," the Plaquemines Parish President "executed a document . . . 'commandeering' a significant portion of [Plaintiff's] land. . . ." State Ct. Compl. ¶ 4.  Plaintiff's state court complaint seeks compensation from the Parish for, among other items, the fair market value of the land, clay materials and other minerals removed, and severance damages. *Id*. pp. 4-5.

### 2. The Court of Federal Claims Litigation

National Food filed a complaint in the Court of Federal Claims ("CFC") on March 9, 2010, amending it on July 20, 2010, alleging inverse condemnation and breach of contract claims.  It seeks, among other items, compensation for clay removed from the site and the cost of refilling (remediating) the borrow pit and repairing other damaged areas of the property.  The United States moved to dismiss the inverse condemnation claim on September 3, 2010, and subsequently moved to stay the CFC proceedings pending resolution of the instant direct taking case.  On December 16,

---

[3] *See* Attachment 1.  Plaintiff's state court complaint is a related case and a matter of public record.  This Court may take judicial notice of such items as related cases and matters of public record without converting a Rule 12(c) motion into one for summary judgment.  *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co,* 313 F.3d 305, 313 (5th Cir. 2002).

2010, CFC Judge Charles Lettow issued an opinion and order denying the United States' motions. *See National Food & Beverage Co., Inc. v. United States*, 96 Fed. Cl. 258 (Fed. Cl. 2010).

Following this ruling, the United States answered the CFC complaint and responded to discovery propounded in that suit by National Food. However, it objected to discovery requests that sought information, documents, and records related to activities by the United States occurring after September 30, 2007, and moved for a protective order. The United States argued that it was improper for National Food to seek discovery in the CFC litigation regarding the United States' activities after September 30, 2007, since National Food had alleged and the United States had admitted that the actions giving rise to the CFC litigation had ceased by that date. Therefore, National Food's discovery requests were not germane to the CFC case, but rather were an attempt to obtain information that solely pertained to the instant direct condemnation. National Food responded via a cross-motion for a judgment of liability against the United States for remediation costs and to compel discovery.

The CFC granted the United States' motion for a protective order and denied National Food's cross-motion on March 16, 2011. *See* Order (Attachment 2). Judge Lettow ruled that "[i]f the government's declaration of taking attendant to the case pending in the federal district court is effective, a matter on which this court expresses no view, then National Food's claim for remedial costs would become moot." *See* Order at 2.[4]

---

[4] Because the United States has acquired fee title to the borrow pit in the instant suit, National Food is absolved of any possible responsibility to refill it and accordingly will incur no costs.

### 3. The Instant Condemnation in District Court

The United States filed a Complaint and Declaration of Taking ("DT") in this Court

condemning various estates in the named property on September 14, 2010.[5] *See* Rec Docs. ## 1, 1-1

and 1-2.  It subsequently deposited estimated just compensation, based upon a valuation of the

property as of January 26, 2006, into the Court's Registry.  Pursuant to the DT, the United States

acquired the following interests:

- a fee simple interest, excluding existing easements and oil and gas rights in the 18.30 acres described as Tract No. P602;

- a temporary easement and right-of-way, expiring on January 26, 2011, in, on, over and across the 25.80 acres described as Tract No. P602E-1; and

- a perpetual non-exclusive and assignable easement and right-of-way in, on, over and across the 2.16 acres described as Tract No. P602E-2.

Following the filing the United States moved for an order of possession of the property.  The

motion was granted. *See* Rec. Doc.  # 11, October 4, 2010.  National Food then moved to stay the

transfer of possession, claiming the United States failed to demonstrate any present need for the

property.  The motion to stay was denied on November 23, 2010.  *See* Rec. Doc. # 32.  Judge

---

[5] Subsequent to the commandeering order and its entry onto the property, the Corps initiated nearly four years of negotiations with National Food in an attempt to arrive at a mutually agreed to amount owed for the diminution in value to the property resulting from removal of the borrow and to acquire fee title to the 18.30-acre borrow pit, together with the associated temporary work area easements and perpetual road easement.  An offer to purchase these property interests was made by the Corps on October 4, 2007.  The landowner, through prior counsel, rejected the offer in January 2008, but made no counter-offer.  In June 2009, the landowner filed a claim with the Corps for $45 million pursuant to the Federal Tort Claims Act. The claim was subsequently rejected.  The Corps continued through early 2010 to attempt to negotiate with representatives for National Food, but after another change of counsel, National Food filed the CFC action.  The Corps then referred the Declaration of Taking filed in this case to the Department of Justice as its only possible avenue to both pay National Food for the diminution in value to National Food's property arising from the fill removal and acquire permanent interests in the property.

Berrigan held that National Food had admitted "that the government had a use for the land in question that was 'rationally related' to the New Orleans to Venice Hurricane Protection Project (Rec. Doc. # 25 at 8)." *Id.* at 1. National Food moved for clarification and/or reconsideration, arguing that Judge Berrigan's order could be read to preclude it from presenting its defenses to the taking. *See* Rec. Doc. # 33. It also moved for reallocation of the case. *See* Rec. Doc. # 39. Subsequently, National Food moved for a stay of the instant case, arguing that since the CFC had exclusive jurisdiction over all aspects of the taking of clay from its property in 2006-07 that it would serve the interests of judicial economy to delay the instant case. *See* Rec. Doc. # 55. However, following the CFC's Order of March 16, 2011, *supra*, granting the United States' motion for a protective order and denying National Food's cross-motion, National Food withdrew its motion for a stay.

On April 11, 2011, Judge Berrigan granted in part and denied in part National Food's motion for clarification and/or reconsideration. *See* Rec. Doc. # 65. She stated that "this Court's previous order did not reach the merits of Defendant's pleaded defenses, but simply denied its request for a stay." *Id.* at 2. National Food's motion was denied in all other respects. *Id.* National Food's motion for reallocation was subsequently granted. *See* Rec. Doc. # 66.

## III.    NATIONAL FOOD'S ANSWER AND DEFENSES[6]

National Food's 71-page answer repetitively presents facts, allegations, opinions, and

---

[6] Under Rule 71.1, which controls this proceeding, if a defendant has an objection or defense to a taking, it must be raised in an answer (rather than in a motion to dismiss). Fed R. Civ. P. 71.1(e). A defendant waives all objections and defenses not stated in its answer. *Id.*

argument, together with a number of co-mingled defenses and objections to the taking.[7]  The first section of National Food's Answer purports to contain facts.  *See* Rec. Doc. # 7, pp. 1-23.  However it also contains a number of conclusory allegations to support National Food's claim that the Corps filed the instant action in bad faith.  *See, e.g.,* Rec. Doc. # 7 at § I,  ¶13 (alleging the Corps determined in 2006 that there was no public purpose or necessity to acquire a permanent ownership interest in the subject property); and § I, ¶ 37  (alleging bad faith purposes on the part of the United States by filing the instant lawsuit).  The second section of the Answer claims the United States' complaint is defective, asserting, among other items, that "the complaint and declaration fail to state the actual public purpose alleged as justifying the taking" and failure to provide a summary of the basis of the Corps' alleged value of the property.  *See* Rec. Doc. # 7 at § II, pp. 23-24.  National Food's defenses and objections are set out in Sections III and V of its Answer.   *See* Rec. Doc. # 7 at § III, pp. 24-41; § V, pp. 44-64.  Parsed out, National Food essentially makes the following defenses and objections to this taking:

1.  lack of necessity because the clay has already been extracted from Tract P602;

2.  the Corps acted arbitrarily, capriciously and in bad faith in filing this eminent domain action; and

3.  estoppel.

As explained below, all of National Food's affirmative defenses and objections are insufficient as a matter of law.

## IV. ARGUMENT

---

[7] The United States respectfully submits that National Food's answer does not comport with Rule 8, which requires that a party "state in short and plain terms its defenses to each claim asserted against it."  *See* Fed. R. Civ. P. 8(b)(1)(A).

A.    **Applicable Standards**

1.    **Motions to Strike**

The purpose of a motion to strike "is to gain an early adjudication by the Court as to the legal sufficiency of defenses set forth" in a defendant's answer. *United States v. Southerly Portion of Bodie Island, N.C.,* 114 F. Supp. 427, 428 (D.C.N.C. 1953). Rule 12(f) provides that a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Although motions to strike are generally disfavored, a Rule 12(f) motion to dismiss a defense is proper when the defense is insufficient as a matter of law. *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1057 (5th Cir. 1982). In eminent domain cases, district courts routinely dismiss affirmative defenses that do not constitute valid challenges to the government's authority to condemn the subject property. *See e.g., United States v. 6,162.78 Acres of Land*, 680 F.2d 396, 400 (5th Cir. 1982); *United States v. 416.81 Acres of Land*, 514 F.2d 627, 630-32 (7th Cir. 1975). A motion to strike is "'a useful and appropriate tool' for weighing the legal implications to be drawn from uncontroverted facts." *416.81 Acres*, 514 F.2d at 631, *citing* 5 C. Wright & A. Miller, Federal Practice and Procedure: Civil § 1381 (1969). While for the purposes of a motion to strike, well pleaded facts must be accepted as true, the motions do not admit mere conclusions of law, nor conclusions of fact and law. *See Barnidge v. United States*, 101 F.2d 295, 297 (8th Cir. 1939).

2.    **Motions for Judgment on the Pleadings**

Alternatively, the government requests judgment on the pleadings on the issue of the government's right to take in this action. Rule 12(c) provides that "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings."

Fed. R. Civ. P. 12(c).  "A motion for judgment on the pleadings under Rule 12(c) is subject to the same standard as a motion to dismiss under Rule 12(b)(6)."  *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008).  Therefore, as in a motion to dismiss, all well-pleaded facts are accepted as true and viewed in the light most favorable to the non-moving party.  In order to survive a motion for judgment on the pleadings, a complaint (in this case, defenses) "must contain sufficient factual matter, accepted as true to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949-50 (2009), *quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "Factual allegations must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  However, legal conclusions need not be accepted as true.  *See Iqbal*, 129 S.Ct. at 1949.  A court "can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."  *Id.* at 1950.  "Legal conclusions . . . must be supported by factual allegations."  *Id.*  As a general rule a district court may not consider materials not originally included in the pleadings in deciding a Rule 12 motion without converting it into a motion for summary judgment under Rule 56.  *See* Fed. R. Civ. P. 12(d).  However, a court "may take judicial notice of matters of public record and consider them without converting a Rule 12 motion into one for summary judgment."  *United States v. 14.02 Acres of Land*, 547 F.3d 943, 955 (9th Cir. 2008) (internal quotation marks and citation omitted).

### 3.    Federal Law Controls both Substantively and Procedurally

Federal condemnation actions are functions essential to the federal sovereign.  *See  Kohl v. United States*, 91 U.S. 367, 371 (1875).  Due to its essential nature and constitutional underpinnings, "federal law rules" both in determining the right of the United States to acquire National Food's property and in the determination of just compensation.  *See United States v. 93.970 Acres of Land*,

-10-

360 U.S. 328, 332-333 (1959).  Further, the adoption of Federal Rule of Civil Procedure 71A in

1951, now Rule 71.1, established a uniform set of procedures governing all federal eminent domain

cases.  *See Kirby Forest Industries, Inc. v. United States*, 467 U.S. 1, 4 n.2 (1984); *see also 93.970*

*Acres*, 360 U.S. at 333 n.7 (holding that an earlier requirement for procedural conformity was

repealed by the adoption of Rule 71A).  Rule 71.1 is a special rule for condemnation cases; to the

extent not otherwise provided in Rule 71.1, the other rules apply.  *See* Fed. R. Civ. P. 71.1(a).

Therefore, because of the federal function served by this action, both procedural and substantive

federal law must be applied.

**B.      National Food's Defenses Based on Lack of Necessity Fail As A Matter Of Law**

>   **1.      The Only Viable Defense to a Condemnation Is Lack of Authority**

The United States Constitution allows the United States to take private land for public use

so long as just compensation is provided to the landowner.  *See* U.S. Const. amend. V ("nor shall

private property be taken for public use, without just compensation").  The first element of the

takings clause, "for public use," requires that the taking be authorized by Congress; once an

authorized public use[8] is shown, the only question for trial is the amount of just compensation.  *See*

*Berman v. Parker*, 348 U.S. 26, 32–34 (1954).  The decision to exercise eminent domain rests with

Congress, and the jurisdiction of the courts to review such action is extremely limited.  It was long

ago decided that:

> ...while the courts have power to determine whether the use for which private
> property is authorized by the legislature to be taken is in fact a public use, yet, **if this**
> **question is decided in the affirmative, the judicial function is exhausted**; that the
> extent to which such property shall be taken for such use rests wholly in the

---

[8] The term "public use" is today equivalent to the broader term  "public purpose."  *See*
*Kelo v. City of New London, Conn.,* 545 U.S. 469, 479-80 (2005).

legislative discretion, subject only to the restraint that just compensation must be made.

*Shoemaker v. United States*, 147 U.S. 282, 298 (1893) (emphasis added). The Supreme Court "has made clear that it will not substitute its judgment for a legislature's judgment as to what constitutes a public use 'unless the use be palpably without reasonable foundations.'" *Haw. Housing Auth. v. Midkiff*, 467 U.S. 229, 240 (1984). Indeed the Supreme Court has warned that "where the exercise of the eminent domain power is rationally related to a conceivable public purpose, the Court has never held a compensated taking to be proscribed by the Public Use Clause." *Id*. The Fifth Circuit has "repeatedly recognized that the courts have no jurisdiction to review the legislative or administrative discretion as to the extent of the right, interest or estate in property to be taken." *United States v. 2,953.15 Acres of Land*, 350 F.2d 356, 359 (5th Cir. 1965); *accord Heirs of Guerra v. United States*, 207 F.3d 763, 767 (5th Cir. 2000) ("Courts have limited power to review an agency's determination of public purpose.").

The sole valid defense to a condemnation action is that the United States lacks authority to acquire the interest sought in the property. *See United States v. 162.20 Acres*, 639 F.2d 299, 303 (5th Cir. 1981). In other words, the only viable defense is to "challenge 'the validity of the taking for departure from the statutory limits.'" *Id*., *quoting Catlin v. United States*, 324 U.S. 229, 240 (1944). The Fifth Circuit went on to state:

> federal courts do not second-guess governmental agencies on issues of necessity and expediency when condemnation is sought; such matters are within the discretion of the legislature or of the administrative bodies by delegation, and the concept of justiciability limits judicial review to the bare issue of whether the limits of authority were exceeded.

*Id*. Thus, the scope of review of a taking is very narrow. This is especially true when the landowner

asserts that the property or the property interest condemned is not necessary for the project. It is within the discretion of the Secretary of the Army, and not this Court, to define this taking, within the limits set by Congress.  Neither Defendants nor this Court has authority to alter that decision. *See Berman v. Parker*, 348 U.S. at 32–33.  Decisions by an agency involving the nature or extent of a "take" area, such as how much land to acquire or the nature of the estate taken, are within legislative or administrative discretion, and therefore, are generally immune from judicial review. As stated by the Fifth Circuit:

> The argument that land sought to be condemned is not really necessary for the consummation of a plan is frequently made in condemnation cases in an attempt to defeat the taking. This argument has been unanimously rejected by every court which has considered the matter. It is perfectly clear that the judicial role in examining condemnation cases does not extend to determining whether the land sought is actually necessary for the operation of the project.

*United States v. 2,606.84 Acres of Land*, 432 F.2d 1286, 1289 (5th Cir. 1970) (*citing Berman v. Parker*, 348 U.S. at 35).

In *2,606.84 Acres* the Fifth Circuit defined the scope of permissible inquiry.  *Id*. at 1290. First, it noted that *Catlin* indicates that "a landowner has a right to question the validity of a taking as not being for a *purpose* authorized by the statute under which the proceeding is brought."  *Id*. (emphasis in original). However, it went on to conclude, based upon *Berman v. Parker*, *supra*, that the term "purpose" is used "in the sense of the overall project rather than in the sense of some minor part of the project."  *Id*. Therefore, the permissible inquiry is limited to whether the project, as a whole, has been authorized. *Id*.  If the project is authorized, then a "taking for any purpose associated with that project [is] an authorized purpose." *Id*.  Further, in order to prevail, National Food must do more than show that its property is not actually necessary for the project.  It must show that

-13-

the delegated official so overstepped his authority that no reasonable man could conclude that the taking sought to be condemned had some association with the authorized project. In such a case alone could the taking be considered arbitrary or capricious as those terms are used in condemnation proceedings. There must be basic to the project pervasive deception, unreasoned decision, or will-of-the-wisp determination before these words of pejoration are brought into play.

*Id*. National Food cannot meet this standard, even if the assertions in its answer are taken as true.

### 2. Since This Taking Is For An Authorized Project, National Food's Defense of Lack of Necessity Fails

National Food alleges the taking is arbitrary and capricious because there is no necessity for the acquisition. *See e.g.* Rec. Doc. # 7 at § III, ¶ 3-20. Its basis for this defense is National Food's assertion that, since the clay has already been removed, there can be no need for this taking. *Id*. This defense is insufficient as a matter of law. As stated, *supra*, so long as a taking is authorized by Congress, a court may not review the "necessity" of the taking.

The authority for the taking is stated in Schedule A of the DT.[9] *See* Rec. Doc. # 1-2 at 7. Funding for the condemnation is provided by Chapter 3 of Title I of Division B of the Emergency Supplemental Appropriations to Address Hurricanes in the Gulf of Mexico, and Pandemic Influenza

---

[9] National Food claims there are defects in the complaint and declaration of taking. *See* Rec. Doc. # 7 at § II ¶ A-D. The Declaration of Takings Act ("DT Act"), 40 U.S.C. § 3114, together with Fed R. Civ. P. 71.1, define the applicable requirements. The DT Act requires that a DT contain "a statement of the authority under which, and the public use for which, the land is taken." *See* 40 U.S.C. § 3114(a)(1). It further requires "a statement of the estate or interest in the land taken for public use." *See* 40 U.S.C. § 3114(a)(3). A statement of the amount of money estimated to be just compensation is also required. *See* 40 U.S.C. § 3114(a)(5). The DT filed herein satisfies these requirements. *See* Rec. Doc. ## 1, 1-1 and 1-2. National Food's claim that the United States failed to provide "required advance disclosure of a summary of the basis by which the value alleged" was determined is not a defect because no such requirement exists. *See* Rec. Doc. # 7 at § II, ¶ D. The amount of the estimate of just compensation, required pursuant to the DT Act, is not justiciable. *See In re United States*, 257 F.2d 844, 848 (5th Cir. 1958) (held that the courts have no jurisdiction to review the amount of estimated just compensation deposited).

-14-

Act, 2006, Pub. L. No. 109-148, 119 Stat. 2680, 2762-2763. *Id*. The public uses for the taken land, also in Schedule A of the DT, are that the "land is necessary for the construction, repair and rehabilitation of the New Orleans to Venice Hurricane Protection Project, Emergency Levee Repairs, Plaquemines Parish, Louisiana, and for such other uses as may be authorized by Congress or by Executive Order." *Id*. Schedule C of the DT states the interests the United States is acquiring. *Id*.

This statement of public use is more than sufficient to satisfy the requirements of the statute. For example, a simple statement that "the use for which the [land] is acquired is for the purpose described in said acts" has been held a sufficient statement of public use. *United States v. 16,572 Acres of Land*, 45 F. Supp. 23, 25-26 (S.D. Tex. 1942). Here the statement of public use references a project for which the property is being acquired. No statement of the physical use to which the United States will put the property is required.

Tellingly, National Food does not claim the project is unauthorized or not for a public use. Instead it argues that the cited authority does not allow the condemnation of a fee interest in Tract P-602. *See e.g.* Rec. Doc # 7 at § III, ¶ 10. The authority for the taking contains no such limitation. National Food goes on to state that the "fee is not reasonably related or reasonably necessary to 'maintain, operate or prosecute works for the improvement of rivers and harbors for which provision has been made [to USACOE] by law.'" and that the taking of its property does not "contribute to any authorized mission or function of the Corps, or serve *any* public interest or even contribute to the general welfare of the community." Rec. Doc # 7 at § III, ¶ 11. This is purely an argument that the taking is unnecessary. National Food makes no allegations that hurricane protection is not a public use. It simply quibbles with the acquisition of a fee interest in a portion of its property. The determination of the extent of the property interests to be acquired is not justiciable. In *West, Inc.*

*v. United States*, 374 F.2d 218 (5th Cir. 1967), the landowner argued that the United States was not authorized to take a fee interest because a flowage easement would suffice.  The Fifth Circuit disagreed, holding that the "character of the title to be taken [is a] decision vested exclusively in the Secretary."  *Id.* at 222.  Similarly, here the determination to take a fee interest in Tract P602 is not subject to review.

National Food's defenses to the taking, insofar as they are based upon National Food attempting to demonstrate that the United States does not "need" the property, necessarily fail.  This Court is simply not empowered to determine whether the land is, or is not, necessary.

**C.    The United States Has Not Acted Arbitrarily, Capriciously Or In Bad Faith**

National Food claims this case was brought in bad faith and for an improper purpose.  *See e.g.* Rec. Doc. # 7 at § III, ¶ 27-32.  Its basis for this claim is its belief that it is entitled to "the cost to repair the damage to the land at issue, including the cost to remediate the borrow pit as is required by Plaquemines Parish Ordinance § 18-1."  *Id.* at § III, ¶ 27.  National Food asserts that one of the reasons the United States filed the instant action was to evade "the expected claim of National for the cost to remediate the pit."  *Id.* at § III, ¶ 16.[10]  It argues that such a basis for filing this condemnation action evidences bad faith.  *Id.*  Contrary to National Food's assertions, even if its allegations are taken as true, they again do not provide a defense to the taking.  The United States is not required to be oblivious to elements of cost.  It may condemn property in order to relieve itself of possible liability.

An agency designated to acquire property interests for a legislated public purpose may

_____

[10] National Food also claims the instant case was brought in order to deny it "the full value of the clay that the U.S.A. took in 2006-2007."  *Id.*  The United States is not, in the instant motion, addressing issues related to valuation.

exercise that authority to the full extent of its statutory authority. *See United States. ex rel. T.V.A. v. Welch*, 327 U.S. 546, 551-52 (1946). In determining whether a taking is for an authorized public use the entirety of the transaction must be examined. In *Welch*, construction of a dam flooded a highway, isolating over 200 families. *Id.* at 548. The T.V.A. condemned the land of these owners rather than constructing a new highway, in part because it was significantly less expensive to do so. The district court dismissed the taking and the Fourth Circuit affirmed, finding that "T.V.A.'s purpose in condemning the land in question was only one to reduce its liability arising from the destruction of the highway." *Id.* at 551. It held that taking lands for such a purpose was "a 'private' and not a 'public use' or, at best, a 'public use' not authorized by statute." *Id.* The Supreme Court reversed, holding the condemnations were proper. It held that the entire transaction had to be viewed as "a single integrated effort on the part of T.V.A. to carry on its Congressionally authorized functions." *Id.* at 553. The desire of the T.V.A. to prevent a waste of government funds did not mean that T.V.A. lacked the power to condemn. The Court held:

> The cost of public projects is a relevant element in all of them, and the government just as anyone else, is not required to proceed oblivious to elements of cost. And when serious problems are created by its public projects, the Government is not barred from making a common sense adjustment in the interest of all the public.

*Id*. at 554 (internal citations omitted). Therefore, the United States was able to acquire the properties despite the fact that T.V.A. would make no physical use of the lands.

Similarly, in *United States v. 1.33 Acres of Land*, 9 Fed.3d 70 (9th Cir. 1993), the United States condemned an access easement in order to settle litigation over property it had previously sold. The property required access by a road over an adjacent property. When the adjacent landowner refused access to the new owner, a lawsuit was filed and the United States joined. To

settle the litigation the United States condemned an easement over the adjacent property and conveyed it to the developer. *Id.* at 71. The Ninth Circuit held, even though the United States would not physically use, nor even own the taken easement, that ending the litigation was a public purpose, stating:

> Maybe if the government slogged through all the litigation, it would prevail. But parties often wisely choose a cheap settlement over an expensive victory, because the cheap settlement is economical and efficient. We cannot say that condemning the easement was arbitrary, capricious, or a bad faith means of winding up the property disposal.

*Id.* at 72. *See also Southern Pac. Land Co. v. United States*, 367 F.2d 161, 163 (9th Cir. 1966) (held that the United States was authorized to acquire more rights in property than it strictly needed because it would be advantageous to the government if it had to dispose of the property).

When reviewing the government's actions for arbitrary and capricious conduct and bad faith, the court's role is limited. "The courts may only ascertain whether the [government] based [its] decision on a consideration of the relevant statutory factors and may not substitute their own judgment for that of the [government]." *U.S. Dept. of Interior v. 16.03 Acres of Land,* 26 F.3d 349, 356 (2nd Cir. 1994). The standard to prove arbitrary and capricious conduct on the part of the government is "very high," and a "party seeking to have a court declare an agency action to be arbitrary and capricious carries a heavy burden indeed." *Moskiewicz v. U.S. Dept. of Agriculture*, 791 F.2d 561, 563 (7th Cir. 1986); *Village of Bensenville v. Federal Aviation Admin.*, 457 F.3d 52, 70 (D.C. Cir. 2006).

National Food alleges that the filing of the instant action was done in order to prevent it from recovering the cost of remediating the borrow pit area. *See* Rec. Doc. # 7 at § III, ¶ 16. Even if it is assumed that this is true, saving the United States taxpayers the cost of remediation does not

-18-

demonstrate that this taking is arbitrary, capricious or in bad faith. National Food first claims that Tract P602, the borrow pit, has a value of $1,000,000 in its current condition, *i.e.*, subsequent to the Corps' removal of clay. *See* Rec. Doc. # 7 at § IV, ¶ 4(a). National Food later claims it would cost $35,000,000 to refill and otherwise remediate Tract P602, the borrow pit. *See* Rec. Doc. # 7 at § VI, ¶ 1(b). This amount is in addition to National Food's claimed value for the injury to the property, *i.e.*, its claimed value of the clay. *Id.* at § VI, ¶ 1(a). If, for the purposes of the instant motion, it is assumed that National Food's asserted cost of remediation is correct, and that, but for this action, the United States would be liable for such costs, the United States is saving the taxpayers $34,000,000 by condemning Tract P602. As the Supreme Court stated, the United States is "not required to proceed oblivious to elements of cost." *Welch*, 327 U.S. at 554. The United States' taking of the subject property is clearly not arbitrary, capricious nor in bad faith.

This is further demonstrated when National Food's claim regarding the costs of remediation is examined. Rather than injuring National Food, the United States' filing of the instant action has relieved National Food of a claimed burden. National Food bases its claim for remediation costs on Plaquemines Parish Ordinance § 18-1." *See* Rec. Doc. # 7 at § III, ¶ 27. National Food is asserting that it would be legally obligated to remediate the property if the United States did not condemn and further, that it would be entitled to restitution for such remediation. Even if it is assumed that this is true, National Food would not be entitled to any amount greater than its actual cost of remediating the property. It would simply pass the payment through to third parties in return for the remediation of the pit. Otherwise it would be placed in a better position than it was prior to expending funds, and hence receive a windfall. Since National Food is now not obligated to remediate the property, it has suffered no compensable injury, insofar as its claimed entitlement to the cost of remediation is

concerned.  The taking benefits National Food because it is relieved of a possible obligation and

further, the United States must pay just compensation for the interests it acquired.  Again, the United

States' taking of the subject property is clearly not arbitrary, capricious or in bad faith.

**D.      Estoppel is Not a Valid Defense to a Taking**

National Food asserts as a defense that the United States is estopped from condemning its

property.  *See e.g.* Rec. Doc. # 7 at § III, ¶ 22-29.  National Food claims the:

> United States represented in its October 15, 2005 and January 17, 2006 cooperation
> agreements with the Parish of Plaquemines (Exhibit 3), that the U.S.A. would not
> seek to condemn a property interest in National's land at issue herein, which
> representation was relied on by the Parish for the benefit of National and citizens like
> National, which reliance provided a sought-after benefit to the U.S.A., depriving the
> U.S.A. *herein*  of the right to seek to condemn *National's property* herein.

*Id*. at § III, ¶ 22 (emphasis in original).  Based on the Cooperation Agreements, National Food argues

that the United States should therefore "be estopped judicially, equitably, promissorily, or otherwise

held to comply with the contract representation and obligation, and in particularly as a result thereof,

estopped from receiving any interest in [the parcels at issue] and particularly a fee simple interest

as to Parcel 'P-602.'"  *Id*. at § III, ¶ 23.  The defense of estoppel, however denoted, must fail.  First,

the Cooperation Agreements contain no such promise as alleged by National Food.  National Food

claims that the agreements contain:

> representations and agreement by the U.S.A. as to what the United States would do
> and not do, including protections in favor of Parish landowners and thus, for
> consideration it received, the U.S.A. stipulated and represented, *inter alia*, that it
> would limit the use of the condemnation powers of the United States only to the
> situation where actual access to needed levee fill materials on a given parcel of land
> identified by the USACOE, could *not* be gotten through the U.S.A.-devised process
> of *the U.S.A.* telling the Parish exactly what property interest the U.S.A. actually
> needed for use by the USACOE, from what particular property it was needed, and to
> get the Parish to issue a state commandeering order.

*Id*. at § I, ¶ 7 (emphasis in original).  National Food goes on to assert that:

> The USACOE in fact obtained and freely operated in 2006-2007 to obtain all the clay from Tract P-602 that it desired, *i.e.*, have in fact a "free and unencumbered right of entry" as referred to in Exhibit 3, Article III, paragraph B, which, if obtained, the U.S.A. represented, promised and agreed in favor of the landowners by way of third party beneficiary status, that it would not exercise its condemnation powers as to any needs for clay or levee construction materials.

*Id*. at § I, ¶ 8.  Contrary to National Food's claims, the Cooperation Agreements make no such promises.  The relevant paragraph states:

> 2. Where the Government is unable to obtain free and unencumbered title on behalf of the Public Sponsor or to reach an agreement with the interest owners in the Private and Other Non-Federal Governmental [lands, easements, and -rights-of-way, including suitable borrow and dredged or excavated material disposal areas], the Government shall obtain such interests, in the name of the United States of America, through the exercise of eminent domain authority.

Rec. Doc. # 7-4 at Art. III, ¶ (B)(2).  The above paragraph demonstrates that the United States represented it would condemn where it either was unable to obtain free and unencumbered title or where it was unable to reach an agreement regarding just compensation with the interest owners. Here there is no question that an agreement was not reached with National Food.  Therefore, the United States, as the Cooperation Agreement intended, filed this eminent domain action.  The Cooperation Agreements do not support National Food's estoppel defense.

Even if the Cooperation Agreements comported with National Food's tortured interpretation, the defense still must fail.  Estoppel is not a valid defense to a condemnation action because the United States cannot contract away the power of eminent domain.  It is questionable whether estoppel will even lie against the United States.  *Cf. Office of Personnel Management v. Richmond*, 496 U.S. 414, 419-24 (1990) (noting "we need not embrace a rule that no estoppel will lie against the Government in any case in order to decide this case.  We leave for another day whether an

-21-

estoppel claim could ever succeed against the Government."); *see also United States v. Southland Management Corp.*, 288 F.3d 665 (5th Cir. 2002) ("there is a longstanding presumption that estoppel against the government is impermissible."). Estoppel cannot be used to deny sovereign rights of the United States. As stated by the Fifth Circuit, the "United States is not subject to an estoppel which impedes the exercise of the powers of government." *United States v. State of Florida*, 482 F.2d 205, 209 (5th Cir. 1973) (held that the United States was not estopped from exercising its right of reentry under a reverter clause). Further, it is unquestioned that the United States cannot be "bound nor estopped by acts of its officers or agents in entering into an arrangement or agreement to do or cause to be done what the law does not sanction or permit." *Utah Power & Light Co. v. United States*, 243 U.S. 389, 409 (1917).

Essentially, National Food is arguing that the Corps gave up the United States' right of eminent domain when the Corps entered into the Cooperation Agreements. The Corps did not, indeed could not, give up the right of eminent domain. "The power of eminent domain is essential to a sovereign government." *United States v. Carmack*, 329 U.S. 230, 236 (1946). As an essential power, it cannot be contracted away. *See Pennsylvania Hospital v. Philadelphia*, 245 U.S. 20, 23-24 (1917). As stated by the Supreme Court:

> The taking of private property for public use upon just compensation is so often necessary for the proper performance of governmental functions that the power is deemed to be essential to the life of the state. **It cannot be surrendered, and, if attempted to be contracted away, it may be resumed at will.**

*State of Georgia v. City of Chattanooga*, 264 U.S. 472, 480 (1924) (emphasis added). Bargaining away the right of eminent domain, as alleged by National Food, is simply not within the power of an executive agency.

-22-

The defense of estoppel is rarely raised in eminent domain cases and has never been successful. In *United States v. Village of Highland Falls*, 154 F.2d 224 (2nd Cir. 1946), Judge Learned Hand applied the above principles in upholding the United States' inalienable power of eminent domain. There, the Secretary of War condemned 380 acres of land owned by Highland Falls, adjacent to the Military Academy at West Point. This land contained the watershed that provided the Village's water. In order to induce the cooperation of the Village, the Secretary of War wrote the Village trustees a letter indicating that the United States would make every effort to acquire the land and watershed for a fair price and allow the Village to continue to utilize the watershed at its current capacity at no charge. However, the War Department never made any effort to purchase the water supply and water system, nor did it guarantee the Village the right to use the water supply at its current capacity. Instead, the United States simply condemned the property. The Village contended that the Secretary's letter constituted a binding contract making the Village's right to receive payment for the watershed and its right to utilize the watershed conditions on the United States' right to condemn the property. In rejecting this position, the Second Circuit held:

> The Village's defence [sic] against the judgment of condemnation is plainly invalid. Even if the [Secretary's] letter had promised to surrender the plaintiff's power of eminent domain, and if that promise had been supported by a valid consideration and been in all respects valid as a contract inter parties, it would not have tolled the plaintiff's power of eminent domain. That power, like other constitutional powers, not even a legislature can surrender.

*Id.* at 226.

If neither the Secretary of War nor the legislature can surrender the power of eminent domain, it is abundantly clear that a District Engineer cannot contract away the United States' eminent domain rights. In other words, even if a court were to otherwise find estoppel applicable, it cannot

be applied against the United States in such a manner as to defeat the United States' sovereign right of eminent domain. This was the determination in *United States v. 18.16 Acres of Land*, 598 F.Supp. 282 (E.D.N.C. 1984), another of the few eminent domain cases analyzing an estoppel defense. There the court found that the landowner had established the elements of a traditional estoppel defense. *Id*. at 288. The court held that (1) the government knew the true facts; (2) intended for its conduct to be acted upon or acted in such a way that the landowner had a right to believe the conduct was so intended; (3) the landowner was ignorant of the true facts; and (4) the misconduct was relied upon to the detriment of the landowner. *Id*. The court then noted that if estoppel were to apply to the United States, "the party seeking estoppel must show that the traditional elements of estoppel are present *and* that the government has engaged in affirmative misconduct." *Id*. (emphasis in original). However, rather than proceeding to determine whether or not the "affirmative misconduct" standard had been met, the count held that "estopping the United States in this case would violate a fundamental tenet of our system of government, *i.e.,* the separation of powers doctrine." *Id.* at 288. The court held that allowing estoppel based upon the unauthorized actions of a government representative would effectively circumvent or waive statutory and/or regulatory mandates and requirements. *Id.* The judiciary does not have "the power to rewrite those regulations and statutes." *Id.* at 289. Therefore, "courts have long held that a government agent needs *actual* authority in order to even raise the possibility of governmental estoppel." *Id.*; *see also United States v. Marine Shale Processors*, 81 F.3d 1329, 1348 (5th Cir. 1996 ) (*citing Richmond* in noting the separation of powers difficulties inherent in an estoppel of the United States).

    The above demonstrates that National Food's claim that the United States is estopped from condemning its property pursuant to the Cooperation Agreements is untenable as a matter of law.

Even if the Cooperation Agreements could be read to promise that the United States would not condemn National Food's property, the District Engineer, who signed on behalf of the Corps, does not, indeed cannot, have the authority to promise not to condemn.  National Food's defenses based upon estoppel must therefore be struck.

## V. CONCLUSION

For the above reasons the United States respectfully requests that National Food's defenses and objections based on lack of necessity, arbitrary and capricious and bad faith conduct and estoppel be struck, or alternatively, that the United States' motion for judgment on the pleadings be granted on the United States' right to take.

Respectfully submitted,

JIM LETTEN
UNITED STATES ATTORNEY

    */s/  Glenn K. Schreiber*
**GLENN K. SCHREIBER**
Assistant United States Attorney
650 Poydras St., Suite 1600
New Orleans, Louisiana 70130
Telephone:  (504) 680-3093
Fax: (504) 680-3186
Email:  glenn.schreiber@usdoj.gov


    */s/  Marc Gordon*
Marc Gordon
U. S. Department of Justice
Land Acquisition Section
601 Pennsylvania Ave., N.W.
Room 6605
Washington, DC 20004
Telephone: (202) 305-0291
Email: marc.gordon@usdoj.gov

-25-