UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES | CIVIL ACTION |
| VERSUS | NO: 10-3062 |
| NATIONAL FOOD AND BEVERAGE CO., INC., ET. AL. | SECTION: J(1) |

### ORDER AND REASONS

**NATURE OF MOTION AND RELIEF SOUGHT**

Before the Court is Plaintiff United States of America's **Motion to Strike Answer to Complaint, or in the alternative, for Judgment on the Pleadings (Rec. Doc. 75).**

**PROCEDURAL HISTORY AND BACKGROUND FACTS**

This land condemnation action arises out of the United States Army Corps of Engineers ("Corps") reconstruction and rehabilitation of levees in and around the city of New Orleans and the surrounding Gulf Coast in the wake of Hurricane Katrina. To facilitate this project, the Corps entered into several "Cooperation Agreements" with Plaquemines Parish. The terms of these agreements provided that the Corps would identify the

Plaquemines Parish properties it needed for the levee repair and reconstruction project.  The Parish, in turn, agreed to use its powers to commandeer the properties identified by the Corps under the Louisiana Homeland Security and Emergency Assistance and Disaster Act[1] and thereafter to grant the Corps a right of entry thereon.  The Corps then agreed to provide the owners of the commandeered properties the required "just compensation" and to subsequently undertake the actual rehabilitation and reconstruction efforts.  In the event that the Corps was unable to obtain unencumbered title to the property or to otherwise reach a settlement with the property owners, the agreements specified that the United States would use its power of eminent domain to take the property.

On January 26, 2006, Plaquemines Parish commandeered interests in property owned by Defendant National Food and Beverage Company, Inc ("National").[2]  Specifically, the Order commandeered assignable rights and easements in Defendant's property and provided that it was to be used as a "work area . . . to obtain borrow, to stockpile borrow material, to excavate and remove soil, dirt, and other materials from said property" as

---

[1] See La. R.S. 29:727F(4) (providing Parish Presidents the power to "commandeer or utilize any private property if he finds this necessary to cope with the local disaster").

[2] See Commandeering Order, Rec. Doc. 7-5.

well as to "to perform any other work necessary and incident to the construction of the Project."[3] It further granted a right of entry to the Corps and its contractors to "gain access to obtain borrow, to stockpile and process material, and to construct (repair and rehabilitate) said levee." The Corps' contractors subsequently entered the property, and in accordance with the Commandeering Order, removed certain materials – namely a large quantity of clay – which were used for the construction and rehabilitation of levees damaged in Hurricane Katrina.

National first filed suit in state court against Plaquemines Parish on January 25, 2007, alleging a taking based on the Commandeering Order and seeking compensation for the fair market value of the land, the clay and other minerals removed therefrom, and severance damages. Subsequently, on March 9, 2010, National filed a Complaint in the Court of Federal Claims ("CFC"), alleging an inverse condemnation and breach of contract and seeking compensation for the clay removed from the land, the costs of remediating the borrowing pit, and repairing other damaged areas of its property.

Shortly thereafter, negotiations between the parties to (1) resolve National's claim for diminution of property value resulting from the excavation of the clay, and (2) to grant the

---

[3] Rec. Doc. 7-5, p. 1.

Corps other permanent interests in National's property, failed. Accordingly, the United States filed a Complaint and Declaration of Taking in this Court on September 14, 2010.  The Declaration of Taking granted the United States a fee simple interest, excluding existing easements and oil and gas rights in the 18.30 acres described as Tract No. P602; a temporary easement and right of way across the 25.80 aces described as Tract No. P602E-1; and a perpetual non-exclusive and assignable easement and right of way across the 2.16 aces describes as Tract No. P602E-2.[4]  On October 4, 2010, National filed a 71-page Answer,[5] asserting various objections and defenses. The Court subsequently granted[6] the United States' motion for an order of possession on October 5, 2010 and denied[7] National's motion for a stay on November 23, 2010.

Meanwhile, back in the CFC, the United States moved to dismiss National's inverse condemnation claim and, subsequently, to stay the proceedings pending the outcome of the instant condemnation suit.  The CFC denied both motions on December 16, 2010.  Specifically, it found that National had stated a claim

---

[4]  See Rec. Doc. 1-2.

[5]  Rec. Doc. 7.

[6]  Rec Doc. 11.

[7]  Rec. Doc. 32.

for inverse condemnation and that there was no need to stay the proceedings because the case pending in this Court and the CFC claim involve "distinct and separate takings which address land that overlaps only in part, occurred at different times, and involve entirely separate operative facts." <u>National Food & Beverage Co., Inc. v. U.S.</u>, 96 Fed. Cl. 258, 268 (Fed. Cl. 2010).

On July 26, 2011, the United States moved to Strike National's Defenses and Objections to the taking, or in the alternative, for judgment on the pleadings on the issue of the government's right to take in the instant case.[8] National amended its Answer,[9] setting forth additional facts learned since the date of its original Answer, and then filed a Memorandum in Opposition[10] to the United States' Motion.

## PARTIES' ARGUMENTS

The United States argues that National has pled several defenses, each of which is insufficient as a matter of law to preclude the Government's ability to take its property. Accordingly, it requests the Court to strike these defenses and objections, leaving only the issue of the amount of just compensation for trial.

---

[8]   Rec. Doc. 75.

[9]   Rec. Doc. 80.

[10]  Rec. Doc. 81.

The first defense urged by National is that the United States acted arbitrarily and capriciously in filing the instant condemnation action because it bears no rational relationship to any Congressionally authorized purpose.  Specifically, it contends that the taking of fee title to the disputed property is not reasonably or rationally related to any authorized project or purpose, as relied upon in the declaration of taking.[11]  The crux of National's argument is that the temporary clay removal was the *only* rational connection to any flood control project regarding the disputed property, and because the clay had already been removed at the time this condemnation action was filed, the taking was arbitrary and capricious.  The United States characterizes Defendant's objections as essentially arguing that the present taking is simply "unnecessary" to the Corps' project. This, it points out, is beyond the permissible scope of judicial review and thus fails as a matter of law.

---

[11] The Declaration of Taking lists the following authority for the instant taking: the Declaration of Taking Act, 40 U.S.C. §§3113 and 3114; 33. U.S.C. §594; and 33 U.S.C. §701n, which authorizes the repair and rehabilitation of any flood control work threatened or destroyed by flood; Section 203 of the Flood Control Act of 1962, Pub. L. 87-874, 76 Stat. 1173, 1184, as amended, which authorizes the New Orleans to Venice Hurricane Protection Project; and chapter 3 of Title I of Division B of the Emergency Supplemental Appropriations to Address Hurricanes in the Gulf of Mexico, and Pandemic Influenza Act, 2006, Pub. L. No. 109-148, 119 Stat. 2680, 2762-2762, which funded the New Orleans to Venice Hurricane Protection Project.  See Rec. Doc. 1-2.

Defendant also objects that this condemnation action was filed in bad faith and for an improper motive. Specifically, it alleges that the United States was principally motivated by a desire to interfere with its "vested right" to compensation for the 2006-2007 clay removal, to escape responsibility for the costs to repair the damage to the land caused by the clay removal, and to evade responsibility for the costs of remediating the clay pit, as required under certain Plaqemines Parish Ordinances.[12] Further, stressing that the CFC has exclusive jurisdiction over all aspects of the 2006-2007 taking under the Tucker Act, Defendant repeatedly asserts that the United States also instituted this taking to interfere with National's prosecution of its claims in the Court of Federal Claims. Defendant urges that the Corps has stated that it initiated the instant condemnation action as a vehicle to adjudicate and provide compensation for the 2006-2007 taking, in addition to the present taking. The United States argues that such defenses are not legally cognizable, and thus insufficient to preclude the instant taking. Further, it asserts that Supreme Court jurisprudence establishes that a government agency may use its eminent domain power solely to reduce its liability arising from another taking.

---

[12] See Plaquemines Parish Ordinance § 18-1.

The final defense raised by National is that the United States is estopped from condemning the property because in the cooperation agreements with Plaquemines Parish, it represented that it would *only* use its condemnation powers in the event that it was unable to obtain access to levee fill materials on a given parcel of land through a Commandeering Order issued by the Parish.  In response, the United States points out that the applicable provision of the Cooperation Agreements makes no such representations.  More poignantly, however, even if the Court were to accept Defendant's interpretation of the agreement, the United States argues that estoppel is not a valid defense to a condemnation action because the an executive agency cannot contract away the power of eminent domain.

## DISCUSSION

Under Federal Rule of Civil Procedure 12(f), "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed.R.Civ.P. 12(f). The decision to grant or deny a motion to strike lies within the sound discretion of the trial court. Tarver v. Foret, 1996 WL 3536, *1 (E.D. La. Jan. 3, 1996). Although motions to strike are generally disfavored by courts, a Rule 12(f) motion to dismiss a defense is procedurally proper when the defense is insufficient as a matter of law.  Kaiser

Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc., 677 F.2d 1045, 1057 (5th Cir. 1982). Further, courts have often granted such motions with respect to defenses asserted in condemnation proceedings. See U.S. v. 162.20 Acres of Land, 639 F.2d 299, 301 (5th Cir. 1981); U.S. v. 6,162.78 Acres of Land, 680 F.2d 396, 400 (5th Cir. 1982). For the purposes of deciding a motion to strike, all well pleaded factual allegations must be accepted as true, but the Court need not accept legal conclusions. See Kaiser Aluminum, 677. F.2d at 1057. Here, then, accepting all Defendant's factual allegations as true, the question before the Court is whether National's articulated defenses are insufficient as a matter of law.

Generally, there are two ways the Government may exercise its powers of eminent domain. First, it may simply take physical possession of property without instituting condemnation proceedings, in which case the property owner may seek just compensation through an inverse condemnation action under the Tucker Act. See United States. v. Dow, 357 U.S. 17, 21 (1958); 40 U.S.C. §3114. Second, the Government may institute condemnation proceedings in accordance with a federal statute authorizing the taking. Dow, 357 U.S. at 21. The Declaration of Taking Act does not provide independent authority to condemn property. Id. Instead, it provides for ancillary proceedings

9

which essentially allow the Government to immediately acquire title to the property by filing a declaration of taking and depositing a sum of money representing the estimated just compensation.  Id. at 23; Catlin v. United States, 324 U.S. 229, 240 (1945); United States v. 2,997.06 Acres of Land, 471 F.2d 320, 337 (5th Cir. 1972).[13]

After the declaration of taking has been filed and the funds deposited in the court's registry, the taking is complete, and the scope of judicial review is quite limited.[14]  See 162.20 Acres of Land, 639 F.2d at 303-304 (noting that the court's function in such a proceeding is "almost ministerial").  The Fifth Circuit has cautioned that courts may not "second-guess" agencies with respect the necessity or expediency of the particular takings at issue.  See id.  Such determinations have been delegated to the agencies, and "the concept of justiciability limits judicial review to the bare issue of

---

[13]  In cases where the Government has not taken possession of the property prior to instituting condemnation proceedings, such as in the instant case, the Declaration of Taking Act allows the Government to escape the burden of paying interest from the time the condemnation suit is filed up until the date of judgment. Dow, 357 U.S. at 23 (citing United States v. Miller, 317 U.S. 369, 380-381 (1943)).

[14]  A landowner, of course, could dispute that the purpose for which the statute authorized the taking was not a "public purpose" as required under the Fifth Amendment.  National, however, does not dispute this issue.

whether the limits of authority were exceeded." Id.; see also Berman v. Parker, 348 U.S. 26, 35-36 (1954)("It is not for the courts to oversee the choice of the boundary line nor to sit in review on the size of a particular project area. Once the question of the public purpose has been decided, the amount and character of land to be taken for the project and the need for a particular tract to complete the integrated plan rests in the discretion of the legislative branch.").

Absent a challenge that the taking was not for a "public purpose," the Fifth Circuit has held that the *sole* viable defense which may be raised in a condemnation proceeding is a lack of authority, or a "departure from the statutory limits." Id. at 303 (citing Catlin, 324 U.S. at 240).  Thus, a landowner may challenge the particular taking as not being for a purpose authorized by the statute under which the condemnation is brought.  This "purpose" inquiry, however, is limited to the purpose of "the overall project rather than . . . some minor part of the project." 2,606.84 Acres of Land, 432 F.2d at 1290. Explaining the proper scope of the inquiry in the facts of one case, the Fifth Circuit explained:

> "[I]f Congress had never authorized a dam on the Clear Fork of the Trinity River, then the landowner might here claim under the Catlin rule that his land was being taken for an unauthorized purpose. However, once Congress approved the Benbrook Dam, the taking for any

11

> **purpose associated with that project was an authorized purpose, and the landowner cannot be heard to complain that the condemnation was not necessary to the dam's construction or operation."** Id. at 1291.

The only exception to this highly deferential standard is when the agency's decision to take the property at issue was arbitrary and capricious. In order for the taking to be arbitrary and capricious, the agency official authorizing the taking must have "so overstepped his authority that no reasonable man could conclude that the land sought to be condemned had some association with the authorized project." Id. Such a decision will be characterized by "pervasive deception, unreasoned decision, or will-of-the-wisp determination." Id.

In this case, National has repeatedly urged the defenses of estoppel and that the present condemnation action was instituted in bad faith and with improper motives. Such defenses are legally insufficient under binding precedent and should be stricken. When the Fifth Circuit held that the "sole defense" to a condemnation proceeding is a departure from statutory limits, the Court believes that it meant what it said. While Defendant has stressed the unique factual circumstances of this case and cited numerous cases for broad propositions concerning the limits of executive power, few of these cases provide guidance in the instant case, and none appear to directly recognize alternative

defenses in condemnation proceedings.[15]

Defendant does not dispute that the New Orleans to Venice Hurricane Protection Project has not been Congressionally authorized. Thus, the only remaining question is whether National's well-pled factual contentions are sufficient as a matter of law to allege that the taking was arbitrary and capricious. The United States has urged that Defendant's objections are merely re-packaged objections as to the "need" to condemn fee title to Defendant's property and must therefore be stricken. Defendant maintains, however, that it has adequately alleged that the taking was arbitrary and capricious because it

---

[15] While National does identify a single Fifth Circuit case which mentions in passing the "possibility" of fraud or bad faith as a defense to a condemnation proceeding, this was merely dicta and not binding. See 2,953.15 Acres of Land v. U.S., 350 F.2d 356, 359 (5th Cir. 1965)("The necessity and expediency of exercising the power, the amount of property and the estates to be taken are all matters to be decided by the grantee of the power and are not subject to judicial review with the possible exception of fraud, bad faith, or abuse of discretion, not here present."). Other Fifth Circuit cases, however, have explicitly refused to recognize a "bad faith exception" as a basis for setting aside a declaration of taking, at least when based upon the estimated just compensation filed in the registry of the court. See in re U.S., 257 F.2d 844, 848 (5th Cir. 1958). The other cases cited by Defendant as support for its defenses provide no such support. The Kelo case related to the "public purpose" requirement of the Fifth Amendment, but Defendant does not dispute that flood control is a public purpose. See Kelo v. City of New London, 545 U.S. 469, 477-78 (2005). The Olek case involved a claim asserted under the Equal Protection Clause in *response* to a taking and did not discuss the taking itself. See Village of Willowbrook v. Olek, 528 U.S. 562, 564-65 (2000).

contends that there was a complete absence of any rational connection of its land to any authorized project when the instant condemnation action was filed in 2010.  Even accepting Defendant's well-pleaded factual allegations as true, the Court finds that its defense is insufficient as a matter of law.

Defendant, in its Answer, does not dispute that its property is wholly unrelated to the New Orleans to Venice Hurricane Protection Project.  To the contrary, it acknowledges that its clay stores and proximity to a levy were the very reasons the Corps originally selected it for the original taking in 2006.  Nonetheless, Defendant protests that "since the subject property was not necessary for any structure, levee, or permanent construction of any type, there never was . . . any need for any fee interest in the subject property."[16]  The Court finds that such allegations merely dispute the necessity of the Corps' decision to take fee title to the property – not that it lacks any rational connection to an authorized project.  Just because there are no plans for the Corps to physically occupy the land does not mean that the property lacks any rational connection to the Corps' authorized projects.  The Fifth Circuit has specifically rejected such contentions as non-justiciable.  See West, Inc. v. United States, 374 F.2d 218, 222 (5th Cir.

---

[16]  Rec. Doc. 7, at ¶ 8.

1967)("The United States . . .is not limited to taking in fee the amount of property which will be physically occupied by the public or actually submerged in a flood control operation. If Congress wanted to dot every i and cross every t in the pursuit of a legislative command, it would have the power and right to do so; but the courts should only sparingly deny governments an operable orbit to accomplish a legislative end.").

Furthermore, Defendant also contends that the United States instituted this condemnation action, in part, to reduce its potential liability for the costs of remediating the clay pit resulting from the 2006-2007 taking.  This on its face constitutes "some association with the authorized project," which is sufficient to preclude a finding that the instant taking was arbitrary and capricious.  Thus, the Court finds that each of Defendant's objections and defenses are legally insufficient and should be stricken.

Accordingly,

**IT IS ORDERED** that Plaintiff's Motion to Strike is **GRANTED.**

New Orleans, Louisiana this 27th day of September, 2011.

CARL J. BARBIER
UNITED STATES DISTRICT COURT