UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES | CIVIL ACTION |
| VERSUS | NO: 10-3062 |
| NATIONAL FOOD AND BEVERAGE CO., INC., ET. AL. | SECTION: J(1) |

### ORDER

This matter is before the Court on Defendant National Food and Beverage Company, Inc.'s Motion to Stay Pending Court of Federal Claims' Ruling in Tucker Act Trial **(Rec. Doc. 92)** and Plaintiff United States of America's Motion to Continue Trial and All Pre-Trial Dates **(Rec. Doc. 103)**. Each party has filed a response to the other's motion.

**PROCEDURAL HISTORY AND BACKGROUND FACTS**

This land condemnation action arises out of the United States Army Corps of Engineers ("Corps") project to repair, strengthen, and expand the levees in and around the city of New Orleans in the wake of Hurricane Katrina. This project represented a massive undertaking and required a massive amount of clay materials.

One way the Corps set about acquiring clay involved cooperation with local governmental authorities. The basic framework for this method was as follows. The Corps first entered into several "cooperation agreements" with the

Plaquemines Parish government.  Under these agreements, the Corps agreed to identify the properties needed for the repair and reconstruction project.  The Parish, in turn, agreed to use its powers to commandeer the properties identified by the Corps under the Louisiana Homeland Security and Emergency Assistance and Disaster Act[1] and thereafter to grant the Corps a right of entry thereon.  In exchange, the Corps agreed to provide the owners of the commandeered properties the constitutionally required "just compensation" and to subsequently undertake the actual rehabilitation and reconstruction efforts.  In the event that the Corps was unable to obtain unencumbered title to the property or to otherwise reach a settlement with the property owners, the agreements specified that the United States would use its power of eminent domain to take the property.

On January 26, 2006, Plaquemines Parish commandeered interests in property allegedly owned by Defendant National Food and Beverage Company, Inc ("National").[2]  The order commandeered assignable rights and easements in Defendant's property and provided that it was to be used as a "work area . . . to obtain borrow, to stockpile borrow material, to excavate and remove soil, dirt, and other materials from said property" as well as to "to perform any other work necessary and incident to the

---

[1] See La. R.S. 29:727F(4) (providing Parish Presidents the power to "commandeer or utilize any private property if he finds this necessary to cope with the local disaster").

[2] See Commandeering Order, Rec. Doc. 7-5.

construction of the Project."[3]  It further granted a right of entry to the Corps and its contractors to "gain access to obtain borrow, to stockpile and process material, and to construct (repair and rehabilitate) said levee."  The Corps' contractors subsequently entered the property, and in accordance with the order, removed certain materials – namely a large quantity of clay – which were used for the construction and rehabilitation of levees damaged in Hurricane Katrina.

Subsequent to the commandeering order, the parties negotiated for a period of almost four years in an attempt to arrive at a mutually agreed upon amount owed for the diminution in value to National's property resulting from removal of the clay and to acquire title to the 18.3-acre pit.  After negotiations were unsuccessful, National filed suit in the Court of Federal Claims ("CFC") on March 9, 2010 under the Tucker Act, 28 U.S.C. § 1346, bringing claims for inverse condemnation and breach of contract and seeking compensation for the clay removed from the land, the costs of remediating the borrowing pit, and repairing other damaged areas of its property.

Shortly thereafter, the United States filed a Complaint and Declaration of Taking in this Court on September 14, 2010.  The Declaration of Taking granted the United States a fee simple interest, excluding existing easements and oil and gas rights in 18.30 acres described therein, as well as a temporary work

---

[3] See Rec. Doc. 7-5, p. 1.

easement and a perpetual road easement over other acreage.[4]  The Court subsequently granted the United States' motion for an order of possession, as well as its motion to strike National's defenses and objections.[5]

Meanwhile, in the CFC, the United States moved to dismiss National's inverse condemnation claim and, subsequently, to stay the proceedings pending the outcome of the instant condemnation suit.  The CFC denied both motions on December 16, 2010.  The CFC found that National had stated a claim for inverse condemnation and that there was no need to stay the proceedings because the case pending in this Court and the CFC claim involve "distinct and separate takings which address land that overlaps only in part, occurred at different times, and involve entirely separate operative facts."  National Food & Beverage Co., Inc. v. U.S., 96 Fed. Cl. 258, 268 (Fed. Cl. 2010).

National filed the instant motion to stay these proceedings pending the CFC's ruling in the Tucker Act case.  While this motion was pending, however, the United States learned that another entity, CLL Limited Partnership, Ltd. ("CLL"), may have an interest in the property at issue that is superior to that of National.

CLL is the company that sold the subject property to

---

[4]  See Rec. Doc. 1-2.

[5]  See Rec Doc. 11; 91.

National in 1999.  During a deposition conducted in the related CFC proceeding, the United States discovered that CLL, who was in the business of selling clay, had specifically excepted all "materials" when it sold the subject property to National.  Based on this newly discovered information, the United States amended its complaint to add CLL as a party to the instant proceeding.  Shortly thereafter, it filed the other motion currently pending before the Court, seeking a continuance of the trial of this matter in order to afford additional time to determine whether National or CLL is the proper party to which just compensation is due.

## PARTIES' ARGUMENTS

The United States argues in its motion that a continuance is necessary in order to afford additional time for the parties to conduct additional discovery and to brief the Court on the issue of which party was the owner of the property taken, and when this taking occurred.  Given that CLL was only added as a party at the end of January, 2012 , it argues that the trial and other pre-trial deadlines must be reset to afford them the opportunity to prepare to litigate these issues.

National agrees that a continuance is warranted, but disagrees as to the basis for such.  It argues that this case should be continued indefinitely and/or stayed in order to allow the CFC to issue its ruling in the pending Tucker Act case.

Because the CFC has determined that it has exclusive jurisdiction over the 2006-2007 takings, National additionally moves the Court to refrain from adjudicating any issues relating to such on the grounds of comity and judicial economy.

In response, the United States argues that National is misinformed in suggesting that this Court lacks jurisdiction to decide issues which may bear on the 2006-2007 taking. The United States' position is that the CFC was in error in not staying the Tucker Act case, because this Court – not the CFC – has jurisdiction to determine the date that the taking occurred. Should this Court decide that the taking occurred when United States was granted a right of entry on the subject property from the Parish in 2006, this direct condemnation action would essentially subsume the taking of the clay at issue in the Tucker Act case before the CFC, according to the United States.

### DISCUSSION

A district court has inherent power to stay any matter pending before it. See Coastal (Bermuda) Ltd. v. E.W. Saybolt & Co., 761 F.2d 198, 204 n.6 (5th Cir. 1985)(citing Landis v. N. Am. Co., 299 U.S. 248, 254-55 (1936)). The party seeking a stay has the burden of justifying it. Wedgeworth v. Fibreboard Corp., 706 F.2d 541, 545 (5th Cir. 1983).

Here, both parties essentially agree that a continuance is warranted, and the Court agrees. At the present time, however,

the Court will defer ruling on the other jurisdictional issues raised by the parties.  CLL has only recently been added as a party to the instant dispute, and because it may have a substantial interest in the resolution of such matters, it should be given the opportunity to be fully heard on these issues before the Court issues a ruling on such. Accordingly,

**IT IS ORDERED** that the United States' Motion to Continue Trial and All Pre-Trial Dates **(Rec. Doc. 103)** is **GRANTED.**  The trial, currently set for March 26, 2012, as well as the pretrial conference, currently set for March 7, 2012, are hereby **CONTINUED**, to be reset at a telephone scheduling conference before the Court's case manager on **Friday, March 9, 2012, at 11:00 a.m.**

**IT IS FURTHER ORDERED** that Defendant National Food and Beverage Company, Inc.'s Motion to Continue Trial Pending Court of Federal Claims' Ruling in Tucker Act Trial **(Rec. Doc. 92)** is **DENIED WITHOUT PREJUDICE.**  National may re-urge any of the jurisdictional issues raised in its motion after a new trial date is set.

New Orleans, Louisiana this 27th day of February, 2012.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE